IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.    )<br>)<br>FRANCIS DAVID SHERMAN, SR.,   )<br>Defendant.    )<br>_____) | Criminal Case No. 4:21CR51 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion to Dismiss Indictment for Violating the Right to a Speedy Trial (ECF No. 17) and Defendant's Motion to Dismiss Indictment Pursuant to Federal Rules of Criminal Procedure 4, 5, 9, and 48 (ECF No. 18). On May 19, 2022, the Court held a hearing on these motions and denied such motions from the bench at the conclusion of the hearing. Thereafter, the Court issued an Order (ECF No. 33) that denied the motions and stated that an opinion would be forthcoming. This Memorandum Opinion sets forth the Court's reasons for its decision.

**I. Factual Findings**

On October 27, 2020, Defendant allegedly walked away from the Residential Reentry Center in Newport News prior to the completion of his sentence from a federal conviction. (Mot. Dismiss Speedy Trial Right at 1, ECF No. 17.) He left to go to his designated workplace but did not show up at work nor did he return to the facility, so the Bureau of Prisons ("BOP") issued a request to apprehend. (Resp. at 2, ECF No. 25.)

On July 7, 2021, the United States Marshal Service ("USMS") arrested Defendant in Pensacola, Florida. (Mot. Dismiss Speedy Trial Right at 1.) The USMS placed Defendant in federal custody at the Santa Rosa County Jail in Pensacola. (*Id.*)

1

On August 10, 2021, an indictment was returned in the Eastern District of Virginia, charging Defendant with (1) escape from custody and (2) failure to register and update sex offender registry.[1] (*Id.* at 2.) The Court then issued an arrest warrant that was stamped as "received" by the USMS on August 10. (*Id.*) On August 13, 2021, the USMS sent a detainer to the Santa Rosa County Jail. (*Id.*) The detainer stated that Defendant "has a right to demand speedy trial on the charges." (*Id.*)

Defendant was notified of the detainer and the pending charges on August 18, 2021. (*Id.*) He signed a form of acknowledgement. (*Id.*) The form stated, "I (do) (do not) demand a speedy trial," with the intent that a defendant would circle one of the options. (Reply at 9, ECF No. 29.) Defendant did not circle either option, and it is unclear what instructions were provided to him. (*Id.*) The form also stated that if he had "any questions regarding the provisions of the Speedy Trial Act, [he] should contact [his] attorney or the U.S. Attorney for the Eastern District of Virginia." (Mot. Dismiss Speedy Trial Right at 2.) Further, it stated, "I understand that if at any time hereafter I desire a speedy trial and have not already done so, I can inform my custodian who will then cause the request to be forwarded to the appropriate U.S. Attorney." (*Id.*)

Roughly a week after signing the detainer, Defendant claims that he told a correctional officer that he wanted to demand a speedy trial. (*Id.*) He gave the correctional officer a handwritten note asserting his speedy trial rights and requesting a court hearing for the pending charges. (*Id.* at 2-3.) On October 13, 2021, Defendant began filing requests via tablet. (*Id.* at 3.) He made another

---

[1] Defendant was convicted of rape on May 14, 1981, in Illinois. (Resp. at 1.) He was convicted of deviate sexual assault on October 8, 1998, in Missouri. (*Id.*) On February 10, 2012, he was sentenced to 144 months of federal imprisonment for Interstate Transportation of a Stolen Motor Vehicle and Access Device Fraud. (*Id.*) On July 21, 2020, Defendant was transferred from FCI Fairton to the James River Residential Rehabilitation Center in Newport News. (*Id.*)

request on October 18, 2021. (*Id.*)  After each tablet request, the jail officials told him that they did not have information on how the USMS operates. (*Id.*)

Toward the end of October or beginning of November, Defendant submitted handwritten motions asserting speedy trial and due process violations to the District Court for the Northern District of Florida. (*Id.* at 3-4.)  The court stamped the motions as received but mailed them back to Defendant stating that he had no open case in that court. (*Id.* at 4.)

At some point, the jail informed Defendant that his federal charges were being dropped and that he would be released on December 6, 2021. (*Id.*)  On December 7, Defendant asked jail officials why he was still incarcerated. (*Id.*)  Defendant was eventually told that the charges were not dropped and that the detainer was still in place. (*Id.*)  Defendant repeated his demand, via tablet, to assert his speedy trial rights. (*Id.*)  He was told that he had to contact the USMS. (*Id.*)  The following day, Defendant requested the contact information for the USMS. (*Id.*)  It is unclear whether he was ever provided with that information.  On December 10, 2021, Defendant mailed a handwritten motion to the United States Attorney's Office in Newport News. (*Id.* at 4-5.)

On December 13, 2021, Defendant was brought before a magistrate judge in the District Court for the Northern District of Florida. (*Id.* at 5.)  The court appointed an attorney, conducted a Rule 5 hearing, and set a detention hearing. (*Id.*)  On December 16, 2021, the court held a detention hearing and entered a detention order. (*Id.*)  Defendant tried to file handwritten motions regarding his speedy trial rights, but they were rejected since he had an attorney. (*Id.*)  The attorney then made oral objections on the record, asserting Defendant's right to a speedy trial. (*Id.*)  The court entered a commitment order directing the USMS to "immediately" and "promptly" transport Defendant to the Eastern District of Virginia. (*Id.* at 5-6.)

At some point after the December 13, 2021, hearing, the USMS reached out to the Justice Prisoner and Alien Transport System ("JPATS") to inquire how to transport Defendant given that he was confined to a wheelchair, wore a back brace, and was seemingly in pain when transitioning to and from vehicles.[2] (Resp. at 8.) It was eventually determined that Defendant could be transported by normal means through JPATS, and Defendant was marked as available for transport through JPATS on January 11, 2022.[3] (*Id.*)

All Pensacola prisoners traveling into or out of BOP or to other districts must go through FCI Tallahassee. (*Id.*) Inmates are moved from Pensacola to Tallahassee only every two to three weeks. (*Id.*) Defendant arrived at FCI Tallahassee on or before January 11. (*Id.*) FCI Tallahassee placed Defendant in COVID-19 isolation on January 16, 2022, and did not update the JPATS system with this information until January 25, 2022.[4] (*Id.* at 9.) He was released from COVID-19 isolation on January 27, 2022. (*Id.*)

Due to COVID-19 isolation, Defendant missed a bus to FCI Atlanta and a flight out of Atlanta. (*Id.*) The next JPATS flight was on January 31, 2022, but Defendant was "unable to be moved in time." (*Id.* at 10.) On February 2, 2022, JPATS scheduled Defendant on the next bus to Atlanta. (*Id.*) On February 9, 2022, Defendant arrived in Atlanta. (*Id.*) In Atlanta, Defendant alleges that prison staff intentionally lost his folder of legal documents. (Mot. Dismiss Speedy Trial Right at 6.)

---

[2] Defendant claims that he had a sixty-foot fall, resulting in a fractured femur and hip, likely occurring after his alleged escape from the Residential Reentry Center but before his detainment in Pensacola. (Exhibit 10 at 1, ECF Nos. 17-10, 19.) He further claims that persistent backpain and weakness in his legs rendered him wheelchair bound and unable to stand for more than five minutes. (*Id.*)

[3] The Government concedes that there was a delay from December 16, 2021, to January 6, 2022, as the USMS failed to submit the proper form to JPATS. (Resp. at 8.) However, the Government also claims that the delay was partially the result of an investigation into whether Defendant would be medically able to be transported in the normal means. (*Id.*)

[4] JPATS was notified that he "did not move because of a BOP comment indicating that his COVID status was positive, and that he was in a – or placed on a COVID watch." (Hr'g Tr. 70:25-71:1.)

On February 17, 2022, Defendant flew from Atlanta to Oklahoma City. (Resp. at 10.) He was scheduled to fly from Oklahoma City to Harrisburg, Pennsylvania, on February 23, 2022, but the flight was cancelled due to inclement weather. (*Id.*) On March 2, 2022, he flew from Oklahoma City to Harrisburg. (*Id.*) He was then picked up by Pamunkey Regional Jail, which is in the Eastern District of Virginia. (*Id.*) He was then transported by bus from Pamunkey Regional Jail to Western Tidewater Regional Jail on March 7, 2022. (*Id.*)

A magistrate judge in the District Court for the Eastern District of Virginia held an initial appearance on March 9, 2022, and an arraignment on March 14, 2022. (Mot. Dismiss Speedy Trial Right at 6.) A status conference was held on March 24, 2022, and the Court set a jury trial for May 2, 2022. (*Id.*) Defendant then filed the instant motions on April 11, 2022. (ECF Nos. 17-18.)

## II. Motion to Dismiss Indictment - Right to a Speedy Trial

### A. Sixth Amendment Right to a Speedy Trial

Under the Sixth Amendment, criminal defendants have the "right to a speedy and public trial." U.S. Const. amend. VI. This fundamental right serves to (1) prevent undue and oppressive incarceration prior to trial; (2) minimize anxiety and concern accompanying public accusation; and (3) limit the possibilities that long delay will impair the ability of the accused to present a defense. *United States v. Ewell*, 383 U.S. 116, 120 (1966). The remedy for a violation of the constitutional right to a speedy trial is to dismiss the indictment and to vacate any sentence that has been imposed. *Strunk v. United States*, 412 U.S. 434, 440 (1973).

There is no bright-line rule to determine how fast or slow constitutes "speedy." Instead, courts must balance four factors: "(1) whether the delay was uncommonly long; (2) what the reason was for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant." *See United States v. Shealey*, 641 F3d. 627, 634 (4th Cir.

2011) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). No factor standing alone is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533.

The Court weighed these factors and determined that Defendant's right to a speedy trial had not been violated.

### 1. Length of Delay

The length of delay is both a factor and a threshold question "because the defendant must establish that the length of delay is at least presumptively prejudicial." *United State v. Burgess*, 684 F.3d 445, 451 (4th Cir. 2012). As a general rule, an eight-month delay is presumptively prejudicial. *United States v. Woolfolk*, 399 F.3d 590, 598 (4th Cir. 2005). The seriousness and complexity of the crime also factors into the reasonableness of the delay. *Barker*, 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."); *see United States v. Pair*, 522 F. Supp. 3d 185, 193 (E.D. Va. 2021) (noting that the prosecution was not particularly complex and "suggest[ing] that even a relatively short delay may cause this factor to weigh in favor of [the defendant].").

Defendant argues that this factor weighs in his favor. He argues that for Sixth Amendment analysis, the length of the delay should be measured from August 2021 and, thus, eight months passed before he filed the present motions. (Mot. Dismiss Right to Speedy Trial at 10.)

The Government contends that the length of the delay should start when the arrest warrant was served on the Defendant, which was on December 13, 2021. (Resp. at 5.) Using this date, only three months passed between his arrest and the filing of this motion. (*Id.*)

The length of the delay should be measured from the date the detainer was filed: August 13, 2021. (ECF No. 17-2.) At that point, an indictment and arrest warrant had already been filed. (ECF Nos. 1, 3.) In *Doggett v. United States*, the Supreme Court noted that the constitutional right

6

to a speedy trial is triggered by "arrest, indictment, or other official accusation." 505 U.S. 647, 655 (1992). In *United States v. Thomas*, the Fourth Circuit determined that the "combination of the criminal complaint, the arrest warrant, and the federal detainer were sufficient to implicate the speedy trial provision of the Sixth Amendment." 55 F.3d 144, 149 (4th Cir. 1995). Likewise, in *United States v. Woolfolk*, the Fourth Circuit found that "the filing of the detainer, warrant, and complaint . . . triggered [the defendant's] Sixth Amendment speedy trial rights." 399 F.3d at 597. Thus, the Court will measure the delay from the date the detainer was filed, resulting in a presumptively prejudicial delay.[5]

### 2. Reason for Delay

The Government provides several justifications for the delay: (1) his prior prison sentence, (2) understaffing of the Florida office of the USMS, (3) COVID-19, (4) Defendant's medical problems, and (5) a weather-related travel delay. (ECF No. 25 at 8-10.)

The Government argues that "[a]ny delay that occurred during the defendant's transport were either at fault of the defendant's unique medical conditions, the COVID 19 Pandemic, inclement weather, or as a result of a normal length of travel through JPATS" and not the fault of the Government. (Resp. at 10.) Defendant argues that the provided reasons weigh heavily against the Government. (Reply at 4.) Defendant contends that the United States Attorney's Office, the USMS, and the BOP all constitute "the government," and thus, all of the reasons for delay should weigh against the Government. (*Id*. at 9.)

The reasons for delay "should be characterized as either valid, improper, or neutral." *United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009). Courts must focus on the intent of the

---

[5] Measuring from the date of the detainer to the date of the filing of the instant motions, the delay was seven months and thirty days. However, when the motions were filed, a trial date had been scheduled. Measuring from the date of the detainer to the scheduled trial date, the delay would have been eight months and nineteen days. Given the simplicity of the charges, this is a presumptively prejudicial delay.

7

prosecution when examining the reasons for delay. (Id.) An improper reason weighs heavily against the government, a neutral reason weighs against the government but less heavily, and a valid reason weighs against the defendant. *United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998).

### i. Prior Prison Sentence

Defendant's prior federal sentence is a valid reason for the delay. Defendant was convicted in the Western District of Virginia and is now being prosecuted in the Eastern District of Virginia. (*See* Resp. at 1.) In *United States v. Penn*, the District Court for the Southern District of New York did not weigh the time defendant was being prosecuted by the Eastern District of New York against the government. 434 F. Supp. 2d 229, 232 n.5 (S.D.N.Y. 2006). Likewise, courts do not hold the time a defendant spends in state custody against the government. *See Grimmond*, 137 F.3d at 828 ("Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay."); *Thomas*, 55 F.3d at 150-51 (characterizing the state's need to finish its prosecution of the defendant as "an obvious reason for delaying [the defendant's] federal prosecution"). Similarly, the Court does not weigh the time Defendant spent in custody for a prior federal sentence against the Government.[6]

### ii. Understaffing of the USMS

Administrative difficulties are considered to be neutral reasons for delay and are construed against the Government, although less harshly than an improper reason. In describing neutral reasons, the Fourth Circuit used "an understaffed prosecutor's office" as an example. *Grimmond*, 137 F.3d at 828. Further, the Supreme Court has used negligence and overcrowded courts as

---

[6] This is not to say that waiting for the completion of a prior federal sentence is advisable. The United States Attorney's Office could have used an Attorney Special Request to transfer Defendant to this district. (*See* Reply Ex. 1 at 1-2, ECF No. 29-1.) There are certainly situations in which awaiting the completion of a prior federal sentence could violate a defendant's right to a speedy trial.

examples of neutral reasons. *Barker*, 407 U.S. at 531. Thus, the delays resulting from understaffing in the Pensacola USMS office are a neutral reason and weigh slightly against the Government.

### iii. COVID-19 Related Delay

Defendant suffered a delay as a result of being in COVID-19 isolation in FCI Tallahassee. (Resp. at 8.) This isolation period caused him to miss a bus to FCI Atlanta and a flight out of Atlanta. (*Id.* at 9.) The Government also contends that COVID-19 has created a myriad of issues that slowed down the JPATS transportation process, such as limiting the capacity of transport vehicles and the effects of quarantines and lockdowns in creating a backlog of prisoners needing transportation. (*Id.*)

Courts have routinely found that delays resulting from COVID-19 are valid reasons. *Pair*, 522 F. Supp. 3d at 194 (collecting cases). In *United States v. Pair*, the Court stated that "[i]n the case of the COVID-19 pandemic, the Government does not bear the ultimate responsibility for the pandemic; the pandemic is outside of the control of either the parties or the courts." 522 F. Supp. 3d 185, 194 (E.D. Va. 2021). In *United States v. Green*, the Court found that a delay caused by a COVID-19 related lockdown at a regional jail should not be weighed against the government. No. 4:20cr1, 2020 WL 6561278, at *13 (E.D. Va. Nov. 9, 2020). Thus, COVID-19 is a valid reason for a portion of the delay in this case as well.

### iv. Defendant's Medical Issues

Delays resulting from a defendant's medical condition do not weigh against the government. *See United States v. Zabaw*, 719 F.3d 555, 563 (6th Cir. 2013) (weighing a delay caused by a defendant's broken hand and hunger strike against the defendant). Defendant's hip

and back issues made it more difficult to transport him safely. The portion of the delay caused by his medical conditions do not weigh against the Government.

### v. Weather-Related Travel Delays

The portion of the delay attributable to the flight being cancelled due to inclement weather does not weigh against the Government. Adverse weather is a valid reason for delay. *See Richardson v. Johnson*, No. 7:08cv336, 2008 WL 4610244, at *1 (W.D. Va. Oct. 16, 2008) (noting that a snowstorm would have defeated the defendant's constitutional speedy trial claim).

### 3. Assertion of the Right

Defendant argues that he "repeatedly and loudly asserted his rights," even during the period he was unrepresented, but was ignored. (Mot. Dismiss Speedy Trial Right at 12-13.) The Government argues that Defendant did not "repeatedly and loudly asserted his rights," given that he did not circle "I do demand a speedy trial on the charges," and argues that his communications are "inquisitive in nature," not an assertion of rights. (Resp. at 10-11.)

The *Barker* Court instructed judges to weigh the "frequency and force" of a defendant's assertion of his or her right to a speedy trial. 407 U.S. at 529. A "defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether [he] is being deprived of the right." *Id*. at 531-32.

Defendant repeatedly asserted his right to a speedy trial. While in the Santa Rosa Jail, he made repeated oral and written inquiries into why he had yet to be moved to Virginia and when proceedings would begin. (Mot. Dismiss Speedy Trial Right at 3-4.) Having received no adequate response, Defendant expressly demanded a speedy trial. (*Id.* at 4.) He also claims to have mailed a handwritten motion to the United States Attorney's Office in Newport News, Virginia, asserting his right to a speedy trial. (*Id.* at 4-5.) These assertions were all made before a lawyer was

appointed. (*Id.* at 5.) Once appointed, during his initial appearance in the District Court for the Northern District of Florida, his attorney asserted Defendant's right to a speedy trial as well. (*Id.* at 5.)

It is clear that Defendant sufficiently asserted his right to a speedy trial. Thus, this factor weighs in his favor.

### 4. Prejudice to Defendant

Defendant argues that his defense was prejudiced by the delay, as his legal papers were lost when being transported on his lengthy journey to this district. (Mot. Dismiss Speedy Trial Right at 15.) Further, he argues that he was prejudiced by the lack of adequate medical care or physical therapy, making incarceration more oppressive and anxiety inducing. (*Id*. at 14-15.) The Government argues that the charges and evidence against him are conclusive, so his defense has not been prejudiced by the supposed delay. (Resp. at 12.) Further, given that he was finishing a prior prison sentence, he would have been incarcerated from August until December regardless. (*Id*. at 11.)

"[T]he Supreme Court has identified three defense interests for consideration: (1) whether there was an oppressive pretrial incarceration; (2) the anxiety and concern suffered by the accused; and (3) the possibility that the defense was impaired." *Hall*, 551 F.3d at 272 (citing *Barker*, 407 U.S. at 532). The last interest, impairment of the defense, is the most important. *Barker*, 407 U.S. at 532. Typically, prejudice to the defendant takes the form of witnesses being unavailable due to the delay, witnesses being unable to remember or recall events due to delay, exculpatory evidence being lost, or evidence being unavailable. *Hall*, 551 F.3d at 273; *Grimmond*, 137 F.3d at 830.

Lower courts have been reluctant to find a speedy trial violation absent a showing of prejudice. *See Shealey*, 641 F3d. at 634 (holding that prejudice was not established where the

11

defendant failed to identify specific prejudice caused by the delay); *see also United States v. Williams*, 753 F.3d 626, 634 (6th Cir. 2014) (holding that prejudice was not established when the defendant would otherwise be in state prison for most, if not all, of the time he was in federal custody awaiting trial); *United States v. Harmon*, 721 F.3d 877, 884-85 (7th Cir. 2013) (holding that there was no prejudice when the delay allowed the government to strengthen its case, but did not impact defendant's ability to present his defense).

Here, there is no prejudice to Defendant's case. While the delay may have resulted in the loss of his legal files, those documents related to his speedy trial claim and not the underlying offenses. There has been no showing that the delay has harmed his defense against the charges brought against him in the Indictment. As such, this factor weighs against Defendant.

**B. Speedy Trial Act**

The Speedy Trial Act ("the Act") must be analyzed separately from the Sixth Amendment claim. The Act mandates that "the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

The point of contention between the parties is what event triggered the speedy trial period. Specifically, the parties disagree on whether the federal magistrate judge in Florida should be considered a "a judicial officer of the court in which such charge is pending." Defendant argues that considering the Florida magistrate judge to be such a judicial officer is "consistent with the spirit and purpose of the Act." (Reply at 13.) Defendant contends that "the court in which such charge is pending" refers to Article III courts, not the court in the district where the indictment was

filed. (*Id*. at 13-14.) The Government contends that the speedy trial period was triggered by the initial appearance in front of the magistrate judge in the District Court for Eastern District of Virginia as that is the charging district. (Resp. at 14.)

Courts throughout the country have held that a defendant appearing before a magistrate judge outside of the charging district does not start the seventy-day speedy trial period. *See, e.g., United States v. Lynch*, 726 F.3d 346 (2d Cir. 2013) (finding that a defendant's appearance in the District of Connecticut started the speedy trial period, not an earlier appearance in the District of New Jersey); *United States v. Wickham*, 30 F.3d 1252 (9th Cir. 1994) (finding that a defendant's appearance in the Northern District of Texas did not start the speedy trial period, as the charging district was the Central District of California); *United States v. O'Bryant*, 775 F.2d 1528 (11th Cir. 1985) (holding that seventy-day speedy trial timeframe did not start until the defendant was transferred from Maryland and appeared in the charging district of Florida); *United States v. Wilson*, 720 F.2d 608 (9th Cir. 1983) (finding that an appearance in the Central District of California, the charging district, started the speedy trial period, not an appearance in the District of Alaska); *United States v. Gomez*, 1:20cr49, 2021 WL 4006136, at *1-2 (E.D. Tex. Aug. 13, 2021) (using the date the defendant first appeared in the Eastern District of Texas, not the date he was arrested and held in the Southern District of Texas); *United States v. Grimes*, No. 11-50029, 2011 WL 3422801, at *1-6 (D.S.D. Aug. 4, 2011) (finding that an appearance in the Western District of Virginia, the non-charging district, did not start the 70-day speedy trial period).

The Court concurs with its sister courts. As such, the speedy trial period began on March 9, 2022, when Defendant had his initial appearance in this district. Thus, only thirty-three days had transpired between the beginning of the speedy trial period and the filing of the instant motions. As such, the Act has not been violated.

### III. Motion to Dismiss Indictment – Criminal Procedure

Defendant argues that the weeklong delay between the conclusion of his prior federal sentence and his appearance before the magistrate judge in District Court for the Northern District of Florida violated Rule 5's requirement that a defendant must be taken before a magistrate judge "without unnecessary delay" after arrest. (Mot. Dismiss Criminal Procedure at 4, ECF No. 18.) Similarly, Defendant argues that the three-month delay between the conclusion of his prior federal sentence sentence and his appearance in the Eastern District of Virginia violated Rules 4, 5, and 9's emphasis on a prompt appearance before a court and the avoidance of unnecessary delay. (*Id.* at 9.) As such, Defendant contends that the Court should use the remedy provided in Rule 48 and dismiss the Indictment with prejudice. (*Id.* at 11-12.)

The Government argues that there was no unnecessary delay at any stage. The Government contends that there was no unnecessary delay in taking Defendant before the magistrate judge in Florida. (Resp. at 16.) Given that the USMS was not informed of the conclusion of his prior federal sentence until Friday, December 10, 2021, and the USMS brought Defendant before the magistrate judge on Monday, December 13, it was not unreasonable for Defendant to wait a week after the conclusion of his prior sentence to see a magistrate judge. (*Id.*) The Government argues that the delay between the completion of his prior federal sentence and his appearance in this district was the result of "a combination of reasonable factors," thus any delay was not unnecessary. (*Id.* at 17.) As such, dismissal under Rule 48 is not appropriate. (*Id.* at 17.)

Rule 48 empowers a court to dismiss an indictment "if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Fed. R. Crim. P. 48(b). This rule can be used to enforce the Sixth Amendment's speedy trial right, but its use is not limited to constitutional violations. *See Pollard v. United States*,

352 U.S. 354, 361 n.7 (1957); *United States v. Goodson*, 204 F.3d 508, 513 (4th Cir. 2000). However, the decision to dismiss an indictment under Rule 48 is left to the discretion of the trial court. *United States v. Ball*, 438 F. Supp. 3d 656, 663 (E.D. Va. 2020), *aff'd*, 18 F.4th 445 (4th Cir. 2021).

Considering that the delay did not result in prejudice to Defendant's case and that the delay was the result of the compounding of several understandable delays, there was no unnecessary delay under the Federal Rules of Criminal Procedure. As such, the Court declines to exercise its discretion to dismiss the Indictment.

### IV. Conclusion

For the reasons stated above, the Court found that Defendant's right to a speedy trial had not been violated. Therefore, the Indictment was not dismissed.

An Order (ECF No. 33) that denied the Defendant's Motion to Dismiss Indictment for Violating the Right to a Speedy Trial (ECF No. 17) and denied Defendant's Motion to Dismiss Indictment Pursuant to Federal Rules of Criminal Procedure 4, 5, 9, and 48 (ECF No. 18) was issued on May 19, 2022.

/s/ 
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: June 13, 2022