IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal Case No. 4:21CR51 (RCY) |
| | ) | Civil Action No. 4:24CV134 (RCY) |
| FRANCIS DAVID SHERMAN, SR., | ) | |
| | ) | |
| Petitioner. | ) | |

**MEMORANDUM OPINION**

Petitioner Francis David Sherman, Sr., a federal prisoner proceeding *pro se*, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Petition"), ECF No. 92. The government filed a Response requesting that the Court deny the Petition. Gov't Resp., ECF No. 101. The Court finds that the materials before it adequately present the facts and legal contentions, and that a hearing would not aid the decisional process. For the reasons set forth below, Sherman's claims will be DENIED, and Sherman's § 2255 Petition, ECF No. 92, will be DISMISSED.

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

On August 10, 2021, a federal grand jury returned an Indictment charging Sherman with (i) one count of Escape from Custody in violation of 18 U.S.C. § 751(a); and (ii) one count of Failure to Register and Update a Sex-Offender Registration in violation of 18 U.S.C. § 2250. Indictment at 1–2, ECF No. 1. Sherman requested court-appointed counsel, and the Court appointed the Federal Public Defender to represent Sherman. *See* Initial Appearance Minutes, ECF No. 6.

Sherman waived his right to be tried by a jury, and on June 22, 2022, the Court, sitting without a jury, found Sherman guilty of both counts of the indictment. *See* Minute Entry, ECF

No. 46; Trial Tr., ECF No. 48. Lindsay McCaslin and Suzanne Katchmar represented Sherman at trial and sentencing. *See* Trial Tr. at 1; Sent'g Tr. at 1, ECF No. 74.

The Court held Sherman's sentencing hearing on October 20, 2022. Sherman's Presentence Report ("PSR") set forth an advisory Guidelines range of 33 to 41 months imprisonment. *See* PSR ¶ 110, ECF No. 65. Sherman faced maximum penalties of 60 months imprisonment, a fine of $250,000.00, and a $100.00 special assessment on Count One, and 120 months imprisonment, a fine of $250,000.00, and a $100.00 special assessment on Count Two. *See* PSR at 1; 18 U.S.C. § 751(a); 18 U.S.C. § 2250. The government moved for an upward variance sentence of six years (72 months) on the grounds that Sherman's "criminal history category of III under-represent[ed] the seriousness of his criminal history and the likelihood that he w[ould] commit further crimes." Gov't Position Paper at 2, ECF No. 54; *see id.* at 3–6.

In support of its request for an upward variance sentence, the government called witnesses at the sentencing hearing to testify about an altercation between Sherman and another inmate at the Western Tidewater Regional Jail ("WTRJ") that occurred on July 4, 2022. Sent'g Tr. at 26–41; *see also* PSR ¶ 61. The government also played and submitted a video recording of the WTRJ incident at the sentencing hearing. *See* Sent'g Tr. at 33. Sherman's attorneys strenuously objected to this evidence as well as the reference to the incident in the PSR; however, the Court overruled those objections. *See* Sent'g Tr. at 15–22; PSR at 28.

The video shows a view of an open two-level housing unit at WTRJ; the rear area of the housing unit is dark, and the portion of the housing unit in the foreground is illuminated. *See* Video at 00:00 to 00:22.[1] The video shows an inmate, identified as Brad Roberts, slowly rolling into an illuminated portion of the lower level of the housing unit in his wheelchair. *See id.* at

[1] The video of the incident was marked and entered into evidence as Exhibit 1 at the sentencing hearing. Sent'g Tr. at 2, 33, ECF No. 74.

00:22–00:32; Sent'g Tr. at 32. Roberts appears to be eating something as he moves toward the front of the housing unit. Video at 00:28–00:32. Sherman, who is also in a wheelchair, emerges from the darkened rear area of the housing unit, and quickly rolls up to Roberts from Roberts' right side. *Id.* at 00:32–00:36. Sherman then stands up from his wheelchair and appears to strike Roberts in the head and face several times with an object.[2] *Id.* at 00:37–00:42. Sherman then appears to place Roberts in a headlock or chokehold, and the two remain this way for a little over two minutes until WTRJ officials arrive. *Id.* at 00:43–02:50. Approximately 20 seconds before jail officials appear on screen, lights are activated illuminating the previously dark rear area of the housing unit. *Id.* at 02:30.

Sherman's counsel pointed out during cross-examination and argument that Sherman may have been threatened by Roberts and that something may have occurred between the two in the darkened area of the housing unit that was not visible in the video. *See* Sent'g Tr. at 35–37, 47–48. Sherman's counsel also argued that Sherman had not been convicted of any crime relating to this incident; he had merely been charged.[3] *See id.* at 15–17, 26, 48. The Court considered all of these arguments, and all of counsels' other arguments, in determining how much weight to give this incident when fashioning Sherman's sentence. *See id.* at 17, 53.

The Court ultimately sentenced Sherman to an upward variance sentence of 60 months imprisonment on Count One and 75 months imprisonment on Count Two, to be served concurrently. Judgment at 2; *see* Sent'g Tr. at 56–57. The Court also imposed a $100.00 special assessment on each count and did not impose a fine. Judgment at 6. Sherman's sentence was upheld on appeal. *See United States v. Sherman*, No. 22-4631, 2023 WL 8064783, at *1–2 (4th

---

[2] Evidence at the sentencing hearing indicated that the object was a removable leg/foot support from Sherman's wheelchair. *See* Sent'g Tr. at 34–35, ECF No. 74. A photograph of the object was marked and received as Exhibit 4. *See id.* at 2, 34.

[3] Sherman was charged with strangulation and malicious wounding, but as of the time of the sentencing hearing, he had not been served with the warrants. *See* Sent'g Tr. at 29–30; PSR ¶ 61, ECF No. 65.

Cir. Nov. 21, 2023) (holding that Sherman's 75-month upward variance sentence was procedurally and substantively reasonable).

Thereafter, Sherman submitted a filing that the Court construed as another Notice of Appeal. ECF No. 83. The Fourth Circuit subsequently dismissed this appeal as improvidently opened and returned Sherman's filing to this Court to be docketed as a § 2255 motion. *See* Order at 2, ECF No. 91. This Court docketed Sherman's reconstrued § 2255 Petition and ordered the government to file a response. *See* Pet., ECF No. 92; Mem. Order at 1, ECF No. 98.

The Court also advised Sherman that he had the right to file a reply opposing any response filed by the government and warned him of the consequences of failing to do so. *See* Mem. Order at 1–2 (citing *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975)). Thereafter, the government filed a Response in Opposition, ECF No. 101. Prior to the filing of the government's Response, Sherman filed a "Motion for Petition of Statement of Facts" ("Motion for Evidentiary Hearing"), ECF No. 99, and a "Motion Under Habeas Rule 6, 7, and 8," ECF No. 100. Sherman did not file a direct Reply to the government's Response.

## II. STANDARD OF REVIEW

A federal prisoner may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence (1) that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," (2) that the district court "was without jurisdiction to impose such sentence," (3) that the sentence exceeds "the maximum authorized by law," or (4) that the sentence or conviction is "otherwise subject to collateral attack." *Id.*; *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

While a § 2255 motion enables a petitioner to collaterally attack his sentence or conviction by initiating a new proceeding, the existence of the right to pursue a collateral attack does not

displace a direct appeal as the "usual and customary method of correcting trial errors." *United States v. Allgood*, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). The "higher hurdle" applies because, once a petitioner's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." *Id.* at 165–66. For this reason, the doctrine of procedural default prevents a district court from reaching the merits of most § 2255 claims that could have been raised on direct appeal.

However, a § 2255 petitioner need not overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. *See United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997). To obtain relief based on an allegation of ineffective assistance of counsel, a petitioner must establish two things: (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) that counsel's inadequate performance resulted in prejudice to the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Conclusory statements are insufficient to carry a petitioner's burden. *See United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000))).

Satisfying the first prong of *Strickland* requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that, "in light of all the circumstances, the identified acts or omissions were

outside the wide range of professionally competent assistance." *Tice v. Johnson*, 647 F.3d 87, 102 (4th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690). The second prong of *Strickland* requires a petitioner to "affirmatively prove prejudice," which means he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Where, as here, a petitioner "alleges that he was denied effective assistance of counsel at sentencing, the [petitioner] must show that, but for counsel's error, there is a reasonable probability that he would have received a shorter sentence." *McAllister v. United States*, No. 7:06-cr-44, 2012 WL 4801521, at *4 (E.D.N.C. Oct. 9, 2012) (citing *Glover v. United States*, 531 U.S. 198, 203–04 (2001)).

## III. DISCUSSION

Sherman's Petition is not a model of clarity. Liberally construed, Sherman's Petition appears to raise three grounds for relief. *See* Pet. at 2–6. In Ground One, Sherman appears to allege that his attorneys were ineffective by failing to object to the video of the WTRJ incident on the grounds that the video had been "censored" or "edited by someone." *See id.* at 2. In Ground Two, Sherman appears to allege that his attorneys were ineffective by failing to object to testimony from the government's witnesses on the basis that the testimony was hearsay and ran afoul of the Confrontation Clause. *See id.* at 3–4. In Ground Three, Sherman appears to claim that his attorneys were ineffective for failing to argue against the upward variance sentence on the grounds that the information considered by the Court was not submitted to a jury and proved beyond a reasonable doubt. *See id.* at 5.

### A. Ground One

At Sherman's sentencing hearing, the government introduced evidence in the form of witness testimony and a video relating to the altercation at WTRJ. Sent'g Tr. at 26–41. Sherman's

counsel objected at length on the basis that the introduction of such evidence was hearsay and violated Sherman's rights under the Confrontation Clause of the Sixth Amendment, but the Court overruled these objections. *See id.* at 18–22. Sherman now claims that his attorneys were ineffective by failing to object to the video on the additional grounds that the video had been "edited by someone" or "censored." Pet. at 2. Sherman's claim fails both prongs of the *Strickland* analysis.

Sherman's claims that the video was edited or censored are completely devoid of any factual support. *See id.* at 2. Sherman appears to claim that some portion of the start of the video was missing. *See id.* at 4 (stating "evidence . . . was edited and was black[ed] out at [the] start of [the] footage of [the] fight"). Sherman does not specify in his Petition what events were missing from the video that the Court saw at the sentencing hearing. *See id.* at 2, 4. In his later-filed Motion for Evidentiary Hearing, Sherman claims that the video does not show Roberts threatening him with a knife because that "part of [the] video footage was black at the beginning of the video." Mot. Evidentiary Hr'g at 2; *see also* Mot. Under Habeas Rule 6, 7, and 8 at 3 (Sherman claiming without any factual basis that someone "tampered with [the] video").

As summarized above, the video shows that the lights in the rear area of the housing unit were not on during the first few minutes of the video. *See* Video at 00:00–02:28. Roberts was sitting in his wheelchair alone in the lighted portion of the housing unit when Sherman emerged from the darkened area, struck Roberts repeatedly with the object, and held Roberts around the neck and head until WTRJ officers arrived. *See id.* at 00:32–02:52. Shortly before the officers appear, additional lights were turned on, illuminating the previously-darkened areas of the housing unit. *See id.* at 02:28.

Sherman's vague and conclusory claims that the video was somehow doctored or edited are belied by the video, and are far from sufficient to establish that his attorneys' failure to object

to the video on this basis was objectively unreasonable. *See Dyess*, 730 F.3d at 359 ("[C]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." (quoting *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995))). Likewise, Sherman fails to establish prejudice. Sherman's counsel capably argued that an incident may have occurred between Sherman and Roberts in the darkened area of the housing unit that was not visible in the video, and that Roberts may have previously threatened Sherman. *See* Sent'g Tr. at 35–37. The Court considered and weighed these arguments, and any objection to the video by Sherman's attorneys on the basis that the video had been tampered with would have been meritless and would have been overruled by the Court.

Moreover, the WTRJ incident was but one facet of the Court's determination that an upward variance was warranted in this case. *See id.* at 56 (noting, among other factors, that Sherman had "15 criminal history convictions that he did not receive points for" in his Sentencing Guidelines calculation). Thus, Sherman has not come close to establishing a reasonable probability that his sentence would have been shorter if his attorneys had objected to the video on the grounds advanced by Sherman. *See McAllister*, 2012 WL 4801521, at *4 (citing *Glover*, 531 U.S. at 203–04). Ground One will thus be DENIED.

**B. Ground Two**

Sherman asserts that his attorneys were ineffective for failing to object to the testimony of the government's witnesses at the sentencing hearing. *See* Pet. at 3–4. Sherman claims that his attorneys should have objected on the grounds that such testimony was hearsay and violated the Confrontation Clause. *See id.*

As an initial matter, the record directly contradicts Sherman's claim that his attorneys failed to object on these grounds. *See* Sent'g Tr. at 18–22. Indeed, counsel objected at length to the testimony of the government's witnesses on the basis of hearsay and the Confrontation Clause.

*See id.* (Attorney Katchmar objecting to the expected testimony from the government's witnesses). The Court also notes that counsel raised similar objections to the related information set forth in the PSR. *See id.* at 15–16 (Attorney McCaslin objecting to Paragraph 61 of the PSR, *inter alia*, on the grounds that Sherman had "not had a chance to confront any of the evidence against him"). The Court simply overruled counsels' objections. *See id.* at 17, 22.

In addition, as the Fourth Circuit has explained, "[h]earsay is permitted at sentencing." *United States v. Padron-Yanez*, 433 F. App'x 189, 190–91 (4th Cir. 2011) (citing *United States v. Love*, 134 F.3d 595, 607 (4th Cir. 1998)); Fed. R. Evid. 1101(d)(3) (providing that the Federal Rules of Evidence do not apply to sentencing proceedings). Likewise, "the Confrontation Clause does not apply at sentencing proceedings." *Padron-Yanez*, 433 F.3d at 191 (citing *United States v. Powell*, 650 F.3d 388, 390–91 (4th Cir. 2011)). In short, Sherman's claims in Ground Two lack any factual support or legal merit, and Ground Two must be DENIED on this basis.

**C. Ground Three**

Finally, Sherman claims that his attorneys were ineffective for not challenging the Court's upward variance sentence on the grounds that the information considered by the Court was not submitted to a jury and proved beyond a reasonable doubt. *See* Pet. at 5. In support of this claim, Sherman cites language from *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See* Pet. at 5. In *Apprendi*, the Supreme Court held that the Sixth Amendment right to trial by a jury requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi*, 466 U.S. at 490 (emphasis added). As noted herein, however, Sherman's sentence did not exceed the statutory maximum.

While the Court did impose a sentence in excess of the 33-to-41-month range suggested by the advisory Guidelines, "*Apprendi* does not apply to upward variances from the advisory

Guidelines [range]." *United States v. Dickerson*, 755 F. App'x 319, 320 (4th Cir. 2019); *see United States v. Winbush*, No. 3:12-cr-21, 2016 WL 5329602, at *5 (E.D. Va. Sept. 21, 2016) (explaining that, "[u]nder the advisory Guidelines regime, a sentence within the statutory maximum that is based upon judge-found facts does not violate the Sixth Amendment" (quoting *United States v. Cole*, 451 F. App'x 459, 460 (5th Cir. 2011))). Thus, any argument by counsel that the Court violated Sherman's Sixth Amendment rights in imposing the upward variance would have been meritless. Accordingly, Sherman has not come close to establishing either prong of *Strickland*, and Ground Three must be DENIED on this basis.

**IV. CONCLUSION**

For the reasons set forth above, Sherman's claims will be DENIED in their entirety and his § 2255 Petition, ECF No. 92, will be DISMISSED. Further, because the record before the Court conclusively establishes that Sherman is not entitled to relief under § 2255, Sherman's Motion for Evidentiary Hearing, ECF No. 99, and Motion Under Habeas Rules 6, 7, and 8, ECF No. 100, will be DISMISSED AS MOOT. A certificate of appealability will be DENIED.[4]

An appropriate Final Order shall issue.

It is so ORDERED.

/s/ RCY
Roderick C. Young
United States District Judge

Dated: September 2, 2026
Richmond, Virginia

[4] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Sherman has not satisfied this standard.